**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-03436-MSK

**HENRY E. BROZOVICH, JR.,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    Defendant.

**OPINION AND ORDER DENYING REQUEST
FOR RECONSIDERATION**

**THIS MATTER** comes before the Court on the Plaintiff Henry E. Brozovich Jr.'s appeal of the Commissioner of Social Security's final decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the SSA, 42 U.S.C. §§ 1381-83c.

## I. Background

Mr. Brozovich applied for both disability insurance benefits and supplemental income in 2012. In each application, he asserted that his disability began on October 1, 2011 as a result of intransigent back pain. His claims were initially denied. He filed a written request for a hearing before an Administrative Law Judge (ALJ), and a hearing was held on July 26, 2013. The ALJ denied benefits in a written decision (the Decision). The Appeals Council denied Mr. Brozovich's request for review; thus, the Decision became the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Brozovich filed a timely appeal to this Court.

Oral argument was held on March 22, 2016, and the Court issued an Oral Ruling reversing the Commissioner's decision and remanding for further administrative proceedings. But the Court stayed entry of judgment for 30 days pending a request for reconsideration by the Commissioner and supplemental briefing by the parties. The Commissioner filed a Supplemental Brief **(#20)** seeking reconsideration of the Court's Oral Ruling. The Plaintiff filed a Response **(#22)** in opposition. The Court has considered all pleadings, supplemental briefing, and the record.

Exercising jurisdiction pursuant to 42 U.S.C. § 405(g), the Court reconsiders, but affirms, its March 22, 2016 Oral Ruling. Supplementing its prior findings and conclusions with this opinion, the Court **REVERSES** the Commissioner's decision to deny benefits **AND REMANDS** for further administrative proceedings.

## II.  Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). This case does not turn on whether the record contains substantial evidence to support factual findings, but instead upon whether the Decision demonstrates application of the correct legal standard. If the Decision applies the wrong legal standard, or fails to clearly demonstrate application of the correct standard, it must be reversed. *Glass v. Shalala*, 43 F.3d 1392 (10th Cir. 1994).

## III.  Material Facts

Mr. Brozovich's alleged disability is based upon pain arising from lumbar spinal degeneration. He worked for 36 years before filing his applications. While they were pending he tried to work at his job as a delivery truck driver, but due to what he characterized as

unrelentingly pain, he was unable to work regularly.  As a consequence, his earnings were insufficient to rise to the level of substantial gainful activity during 2011 and 2012.

The ALJ determined at Step 2 that Mr. Brozovich had a severe impairment of degenerative disc disease of the lumbar spine (L/3/L5/S1), at Step 3 that it did not meet or equal any Listing, and at Step 4, that Mr. Brozovich had an RFC to perform the full range of light work although he could not work as a delivery driver.  At Step 5, the ALJ found that the Medical-Vocational Guidelines directed a finding that Mr. Brozovich was disabled.

Mr. Brozovich testified that while his applications were pending, he worked two to three days per week for five to six hours each day.  He needed to lie down after work and recover on days that he did not work.  When he had a bad day, he was bedridden for the day.  He described experiencing severe and steady chronic pain in his lower back, which sometimes radiated down his legs.  He described the pain as being at a level of 7 or 8 out of 10 (10 being the worst pain) on an average day while taking medication, and a 9 or 10 out of 10 on a bad day while taking medication.  The medication made him tired.  When he participated in a recommended rehabilitation program, it took him a month to recover.  He was not able to sit for longer than 30 minutes at a time and  was only able to lift about 30 pounds.

Mr. Brozovich's medical records reflect primary treatment from Dr. Krotchko beginning in May, 2011 and continuing through July, 2012 for constant, aching lower back pain.  Dr. Krotcho's initial examination showed full range of motion but back stiffness, and x-rays showed mild to moderate discogenic changes at L4-L5 and L5-SI.  Dr. Krotchko examined Mr. Brozovich every few months; each time Mr. Brozovich reported that the pain was the same or worse.  Dr. Krotcho employed a combination of approaches including prescription pain medication and muscle relaxants, physical therapy, and an MRI study (which revealed mild

lower lumbar spine degenerative changes with tiny annular tears at L3-L5 but no cause for radiculopathy being seen). Over the course of Dr. Krotcho's treatment, he observed deterioration in Mr. Bozovich's condition and increasing complaints of pain accompanied by lumbar lordosis, back muscle spasm, decreased range of motion, bilateral lumber spinal and paraspinal muscle tenderness. His notes reflect that Mr. Brozovich's back pain was "out of proportion" to x-ray and MRI findings and that his symptoms were worse despite home exercises and physical therapy. As a consequence, Dr. Krotcho referred Mr. Brozovich to an orthopedist, Greg P. Gutierrez, M.D.

Dr. Gutierrez examined Mr. Brozovich and obtained new x-rays. The new x-rays also showed mild to moderate lower lumbar spine degenerative changes. Dr. Gutierrez diagnosed mechanical low back pain and recommended different exercise modalities, which Mr. Brosovich tried.

After considering Dr. Gutierrez' assessment, Dr. Krotchko diagnosed Mr. Bosovich as suffering from chronic musculoskeletal lumbrosacral pain that was caused or exacerbated by his job which required prolonged sitting. Using the form promulgated by the Social Security Administration that quantifies work-related functional abilities, Dr. Krotchko found that Mr. Brozovich could:

Lift/carry 21-50 pounds occasionally, 11-20 pounds frequently;
Sit 30-40 minutes at one time, three hours total;
Stand one hour at one time, two hours total;
Walk one hour at one time, two hours total;
Lie down/rest one hour per eight-hour workday;
Not workaround unprotected heights, moving mechanical parts, and extreme cold;
Occasionally work around humidity, wetness, dust, odors, fumes and pulmonary irritants, extreme cold or heat, and vibrations;
Frequently operate a motor vehicle;
Not crawl;
Occasionally climb stairs, ramps, ladders and scaffolds, stooping, kneeling and crouching;

4

    Frequently balance;
    Occasionally reach and push/pull;
    Continuously handle, finger, and feel; and
    Frequently operate foot controls.

    The only other functional assessment in the record was prepared by a consulting, examining physician, Dr. Kenneth Lamkin, M.D. He reviewed the radiology reports, and on examination, found that Mr. Brosovich could walk without assistive devices, but his low back revealed significant spasm and tenderness in his right lumbar musculature and left upper lumbar musculature. The sacroiliac joints were tender and Mr. Brosovich experienced increased pain upon twisting. Percussion on the lumbar vertebrae showed tenderness at L4-S1. Range of motion was abnormal in forward bending, but low back extension, side bending and straight leg bending were normal. He diagnosed Mr. Brozovich as suffering from lumbar degenerative disc disease with significant lumbar musculature myofascial pain and sacroiliac joint dysfunction. He assessed Mr. Brozovich's functional limitations to be:

    Sit 30 minutes at one time, 5½ hours total;
    Stand two hours at one time, 5 ½ hours total;
    Walk four to five blocks at one time, 5 ½ hours total;
    Needed to shift positions at will from sitting, standing or walking;
    Lift and carry 20 pounds occasionally;
    Frequent climbing stairs and ramps;
    Occasional climbing ladders and scaffolds;
    Occasional stooping, kneeling and crawling;
    Rare crouching;
    No balancing;
    Occasional reaching;
    Frequent handling, fingering and feeling;
    Rare pushing/pulling;
    No exposure to unprotected heights;
    Rare exposure to humidity, wetness, dust, odors, fumes, etc.;
    Occasional operating a motor vehicle ("Patient can drive only ½ hr");
    Occasional exposure to extreme cold, heat and vibrations;

Extreme impairment in his ability to complete a normal workday and workweek without interruptions from pain and medication side effects and to perform at a consistent pace without an unreasonable number and length of rest periods;

Miss one day of work per month in the summer and six or more days in the winter;

Work 18 hours per week in the summer and 9-12 hours per week in the winter

### IV. Analysis

#### A. Pain and determination of an RFC

Mr. Brozovich raised a number of objections to the ALJ's Decision, including that the ALJ erred by failing to make sufficient specific findings to support his RFC determination.[1] To the extent that the ALJ's findings with regard to Mr. Brozovich's RFC are deficient, reversal and remand is required.

At Step Four in the standard five-step sequential analysis, the ALJ determines whether a claimant has the ability to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). This requires the determination of the claimant's RFC – the most that a claimant can do despite his/her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The RFC is not a medical determination, but rather an administrative finding based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e) and 416.920(e); SSR 96-5p at *2. The RFC determination need not directly correspond to a specific medical opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ must describe how the evidence supports the ALJ's findings and conclusions in a narrative that cites specific medical evidence (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations). SSR 96-8p at *7. In assessing RFC, the ALJ must discuss a claimant's ability to perform sustained work activities in an ordinary work setting on a regular and

---

[1] In light of this court's findings of reversible error with regard to the RFC determination, and particularly the assessment of the effect of Mr. Brozovich's pain, there is no need to address the other challenges.

continuing basis, and describe the maximum amount of each work-related activity the individual can perform based on the evidence in the record. A "regular and continuing basis" generally means 8 hours a day, for 5 days a week, or an equivalent work schedule. The ALJ must also explain how any material inconsistencies or ambiguities in record were analyzed and resolved, including consideration of the claimant's testimony and any medical opinions.

The RFC must reflect an assessment of both severe and non-severe impairments and where there are subjective symptoms, such as pain, the ALJ must address whether and how the claimant's pain affects his/her "capacity to work". 20 C.F.R. §§ 404.1529, 416.929.  In assessing pain, an ALJ is required to consider a wide variety of evidence such as – 1) medical signs and laboratory findings that show a medically determinable impairment that could be reasonably expected to produce pain. 2) objective medical evidence including clinical medical observations that correlate with pain such as tenderness, muscle spasm, and limited motion; (3) the claimant's activities; (4) the location, duration, frequency and intensity of pain; (5) precipitating and aggravating factors; (6) the type, dosage, effectiveness and side effects of any medication taken; (7) treatment other than medication; (8) any other measures used to relieve pain, and 9) statements by the claimant about the nature, severity, intensity, persistence and limiting effects of his or her pain. 20 C.F.R. §§ 404.1529(c), 416.929(c).

Consideration of the effect of pain on a claimant's ability to work requires application of a specified analytical rubric. [2]  At the time of issuance of the Decision, SSR 96-7p governed.  It

---

[2]     In the Tenth Circuit, a 3-step framework has been long recognized. First, the ALJ must (1) determine whether there is a pain-producing impairment demonstrated by objective medical evidence; (2) if so, then the ALJ must determine of whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, the ALJ must then determine whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. *See Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004); *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).

required that the ALJ first determine whether there is an underlying medical impairment that could reasonably be expected to produce the claimant's pain. If so, then the ALJ was required evaluate the intensity, persistence and limiting effects of the claimant's pain on his/her ability to do basis work activities. If the claimant's statements about the intensity, persistence or functionally limiting effects of his/her pain were not substantiated by objective medical evidence, then the ALJ assessed the credibility[3] of the claimant's statements based on the entire case record.

The required analytical rubric was recently revised in SSR 16-3p. SSR 16-3p eliminated considerations of the "credibility" of the claimant's statements. The two-step process remains the same, but the second step requires assessment of statements of the claimant in the context of evidence such as symptoms recorded by medical sources, the longitudinal record of treatment and its success or failure, information from non- medical sources and factors set out in 20 CFR 404.1529(c)(3) and 416(c)(3).

The Decision in this case is premised, at least in part, on an assessment of the credibility of the statements made by the claimant, which is no longer a factor for consideration under SSR 16-3p. It is not clear whether remand is *per se* required to comply with the new standard, however, reversal and remand is required for failure to make adequate factual findings sufficient to support the RFC determination under SSR 96-7p.

---

[3]   Credibility assessments require consideration of (i) the levels of medication and their effectiveness; (ii) the extensiveness of the attempts (medical and nonmedical) to obtain relief; (iii) the frequency of medical contacts; (iv) the nature of daily activities; (v) subjective measures of credibility that are peculiarly within the judgment of the ALJ; (vi) the motivation of and relationship between the claimant and other witnesses; and (vii) the consistency or compatibility of nonmedical testimony with objective medical evidence. *See Branum v. Barnhart*, 385 F.3d 1268, 1273-74. Credibility findings must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *4.

### B. The Decision

This case focuses entirely on the effect of Mr. Brozovich's pain on his ability to work. His back impairment alone does not limit his ability to work. Rather, he contends that it is the pain associated with the back impairment that prevents him from performing some functions and working full-time. Thus, this case starkly demonstrates the importance of an assessment of the intensity, persistence and limiting effects of Mr. Brozovich's pain on his ability to work.

The Decision, however, fails to contain sufficient factual findings to support the RFC the ALJ determined, with a particular deficit in assessment of the intensity, persistence and limiting effects of Mr. Brozovich's pain.

### C. Inadequate Findings as to RFC - Generally

Step 4 of the standard sequential analysis in the Decision begins with a conclusion that Mr. Brozovich can "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)". Light work is a general concept, not precisely defined in Regulations, nor in the Decision. It is described in 20 C.F.R. §§ 404.1567(b) and 416.976 as requiring a good deal of walking or standing and some pushing and pulling of arm or leg controls if it involves sitting. In SSR 96-9p, light work requires an individual to be able to stand and walk for approximately 6 hours in an 8-hour workday.

The only explanation of how the ALJ formulated Mr. Brozovich's RFC is found two conclusory boilerplate statements:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence , based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p and 06-3p.

> In sum, the above residual functional capacity assessment is supported by the medical evidence of record and by the lack of objective findings to support the claimaint's allegations of impairment.

The factual record contains no functional capacity opinion that Mr. Brozovich could perform light work. To the contrary, the only functional capacity assessments included limitations that preclude light work.[4] The ALJ gave these opinions " limited weight" and explained why he did so, but did not specifically address any limitations on standing, walking or need for rest periods. The ALJ also failed to identify any evidence in the record upon which he relied to conclude that Mr. Brozovich could stand and walk for approximately 6 hours in an 8-hour workday. Thus, even assuming that reduced weight was appropriately given to the two medical assessments, there are no factual findings to support the ALJ's finding that Mr. Brozovich could, indeed, perform light work.

### D. Inadequate Findings as to the Effect of Pain

The Decision also lacks sufficient findings as to the effect of Mr. Brozovich's pain on his ability to work. Although the Decision recites the rubric articulated in SSR 96-7p, it does not demonstrate its application. There is no finding as to whether (or what) impairment was likely to cause Mr. Brozovich to experience pain or mention of the clinical observations of spasm and tenderness observed by physicians that correlate with pain. There is no discussion or finding as to the intensity, persistence and effect of Mr. Brozovich's pain on his ability to work. Instead, the Decision contains a general finding that Mr. Bozovich's statements about his pain were "not

---

[4] Dr. Krotchko opined that Mr. Brozovich could stand only one hour at a time for two hours total, and walk one hour at a time for two hours total, and that he must lay down or rest one hour per 8-hour workday, and Dr. Lambkin opined that Mr. Brozovich can only stand two hours at a time for 5 ½ hours total and walk 4-5 black at a time for 5 ½ hours total, and that Mr. Brozovich was extremely impaired in the ability to complete a normal workday and workweek without interruptions from pain and medication side effects and to perform at a consistent pace without an unreasonable number and length of rest periods.

fully credible" without identifying what statements were believable and what statements were not.[5]  The totality of the ALJ's reasoning is set forth in a summary conclusion:

> The undersigned finds that the claimant's **medically determinable impairments**[6] **could reasonably be expected to cause some of the alleged symptoms**; however, the **claimant's statements concerning the intensity, persistence and limiting effects** of the symptoms **are not credible to the extent they are inconsistent with the above residual functional capacity assessment and the medical evidence of record.**

This conclusion begs the ultimate question.  It implies that Mr. Brozovich suffered from some pain (without description) that correlated in some way (unspecified) with degenerative disc disease of the lumbar spine.  It suggests that ALJ found some of Mr. Brozovich's statements (unidentified) about his pain to be credible, but others (unspecified) he did not.[7]  Even this statement lacks specific findings as to the intensity, persistence or limiting effects of Mr. Brozovich's pain on his ability to work.[8]  Instead, the ALJ engages in a logical fallacy – reasoning backwards to equate his premise with his conclusion.  The ALJ assumes that the RFC determination is valid and then qualifies unspecified findings to match.  In addition to lacking sufficient findings, this type of reasoning is incapable of meaningful review.

---

[5]   This general finding is insufficient under the provisions of SSR96-7p, which requires credibility findings to be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

[6]   The Decision refers to "impairments" plural.  Given the finding of only one severe impairment at Step 2, the Court assumes that this was a typographical error.

[7]   Elsewhere in the Decision, the ALJ explains at length "why" the ALJ did not find Mr. Brozovich's statements "fully credible", but the discussion does not provide explanation as to "which" subjective complaints about pain were credible and which were not.

[8]   Instead, the ALJ appears to have expanded credibility determination to make categorical conclusions.  For example, the ALJ stated that Mr. Brozovich's activities and work activity "are not consistent with a finding of disability."   Because Mr. Brozovich testified he helped take care of his father, who is diabetic, and that in December 2011 he told his doctor he was working 40-50 hours per week, Mr. Brozovich's statements that he is unable to perform work on a regular and sustained basis due to his back condition is "not supported by the objective medical evidence or by the claimant's activities of daily living."

In her supplemental brief, the Commissioner attempts to fill in some holes in the ALJ's analysis. She makes three arguments. First, she argues that the ALJ's statement that Mr. Brozovich's statements were not credible "to the extent they are inconsistent" with the RFC of light work is an acceptable finding under Tenth Circuit precedent. She relies on *Keyes-Zachary*, 695 F.3d 1156 (10th Cir. 2012), which she contends stands for the proposition that an ALJ is not required to identify specific statements that are incredible.

The Commissioner's reliance on *Keyes-Zachary* is misplaced. In *Keyes-Zachary*, the claimant complained of disabling pain, and argued on appeal that the ALJ did not adequately analyze or discuss her testimony. She argued that in finding her testimony to be credible "only to the extent that she could perform a narrowed range of light work," the ALJ failed to explain which portions of the testimony he believed and which he did not. *Keyes-Zachary*, 695 F.3d at 1169. The Court of Appeals acknowledged the ALJ did not make explicit findings, but found no reversible error because the Decision specifically identified many of the claimant's statements about her subjective symptoms and addressed each with a specific contradiction or limitation in the record. For example, the ALJ noted "the claimant also reported she suffers from headaches 'every day,' stating she sometimes wakes up with a headache. *However*, the claimant then stated she can sometimes 'get rid of it' with aspirin." *Keyes-Zachary*, 695 F.3d at 1170. The court observed that the ALJ's approach "performed the essential function of a credibility analysis" by indicating to what extent he credited her statements in determining the limiting effect of her symptoms. *Id.*

In contrast to *Keyes-Zachary,* this Decision contains no identification of any specific statement by Mr. Brozovich about his pain or to what degree the ALJ credited or rejected the statement. More importantly, the Decision suggests that there were credible pain complaints but

12

there is no identification of the nature, severity, frequency or intensity of Mr. Brozovich's pain, and no assessment regarding the effect of the pain on his ability to work.

Second, the Commissioner's argues that by comparing Mr. Brozovich's statements with the requirements of light work, one can deduce the weight that the ALJ gave to each of Mr. Brozovich's statements. For example, she argues that Mr. Brozovich's testimony that he is bedridden at least once a week is not consistent with any substantial gainful activity, including light work. The Commissioner reasons that by finding that Mr. Brozovich can perform light work, the ALJ necessarily rejected Mr. Brozovich's statement that he is bedridden at least once per week.

This argument is not persuasive for two reasons. First, it is a *post hoc* explanation of what the Commissioner speculates that the ALJ meant to say. Correct or not, the Court is not free to speculate as to the ALJ's findings or reasoning, but is limited to the Decision, itself. *See, e.g., Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007). Second, this is a repetition of the backwards reasoning found in the Decision. **The law requires that the RFC be derived from factual findings as to what the claimant can or cannot do.** In contrast, **t**he ALJ's and Commissioner's approaches are result-driven. They each start with the conclusion – the RFC - and then tailor the factual findings to fit. Such process ignores the law and evades proper review.

Finally, the Commissioner argues that the Decision's summary of the medical record, Mr. Brozovich's testimony, his work and daily activities, as well as the medical opinions and the reasons for limiting their persuasive weight  makes the necessary findings and reasoning used to determine Mr. Brozovich's RFC. In some cases, this argument might be persuasive, but here it is not. The Commissioner is unable to point to references in the summary that meet the finding

requirements. What work can Mr. Brozovich perform? What evidence shows that he can perform light work? What is the intensity and frequency of Mr. Brozovich's pain and how does it affect his ability to work?

Having considered the supplemental briefing in conjunction with the prior Oral Ruling and record, the Court continues to find reversible error requiring remand due to the ALJ's failure to demonstrate application of the legal requirements for determining the claimant's RFC determination and because the RFC is not supported by substantial evidence.

### IV. Conclusion

For the forgoing reasons, the Commissioner's request for reconsideration **(#20)** is **DENIED**. In accordance with the Court's March 22, 2016 Oral Ruling, and for the additional reasons stated in this Opinion, the Commissioner of Social Security's decision is **REVERSED AND REMANDED** for further administrative proceedings. The Clerk shall enter judgment in accordance herewith and close this case.

Dated this 19th day of July, 2016.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
Chief United States District Judge